UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

    v.                                                                     Case No. 10-20388
                                                                                                                       Honorable Mark A. Goldsmith

D-5    ANTONIO WATSON,
D-10   DAMICHAEL WASHINGTON,

    Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DAMICHAEL WASHINGTON'S [DE#186] MOTION FOR DISCLOSURE OF, AND TO LIMIT THE SCOPE OF, EXPERT TESTIMONY REGARDING DRUG "LINGO" OR "CODE" AND  DEFENDANT ANTONIO WATSON'S [DE#192] MOTION TO LIMIT EXPERT TESTIMONY**

Before the Court are the following motions:

1)    Defendant Damichael Washington's "Motion for Disclosure of, and to Limit the Scope of, Expert Testimony Regarding Drug 'Lingo' or 'Code'" [DE#186].

2)    Defendant Antonio Watson's "Motion to Limit Expert Testimony" [DE#192].

For the reasons set forth below, the Court grants the motions, in part, and denies them, in part.

**I.    Background**

On November 22, 2010, Defendant Damichael Washington filed a "Motion for Disclosure of, and to Limit the Scope of, Expert Testimony Regarding Drug 'Lingo' or 'Code'" [DE#186]. On December 2, 2010, Defendant Antonio Watson filed a "Motion to Limit Expert Testimony" [DE#192]. The motions argued that the government's proposed testimony regarding

Defendants' use of drug "code" or "lingo" in intercepted conversations should be limited because the government had not made the necessary expert disclosures, and because any potential testimony by law enforcement agents in this case would require the agent to impermissibly offer both lay and expert testimony to the jury.

The government submitted expert witness disclosures on January 12, 2011. [DE#227]. The document disclosed that Task Force Officer and Michigan State Police Trooper Keith Sparks would offer his opinion as to the meaning of certain words that were intercepted in conversations during the investigation. The document also set out Officer Sparks' relevant experience and qualifications. The Court reviewed the government's expert witness disclosures and concluded that the document did not purport to include all of the terminology to which Officer Sparks might testify. [DE#269] at 3 (Opinion and Order of 2/9/11). The Court directed that the government submit a supplemental expert disclosure as to the proposed testimony of Officer Sparks. The supplemental disclosure was required to include all of the terms the government wanted Officer Sparks to explain or define, along with the specific basis for Officer Sparks' opinion with regard to each term.

On February 22, 2011, the government filed the supplemental expert witness disclosure. [DE#281]. Defendants did not respond to this disclosure. However, they did indicate in the March 23, 2011 hearing on the present motions that they continue to press their original motions.

**II.     Analysis**

The government's disclosures may be divided into two categories: (i) a chart showing terms that Officer Sparks would define and (ii) four terms or phrases coming from intercepted telephone calls on which Officer Sparks would "testify to his opinion of the meaning of the . . .

terms by apply[ing] his experience to an analysis of the context of intercepted calls[.]" [DE#281] at 4. The Court addresses each category separately.

### A. Chart Terms

After reviewing the government's expert disclosures, the Court concludes that Officer Sparks may testify to the content outlined in the chart on pages two through four of the government's supplemental expert disclosure. The Court is satisfied that the government has provided sufficient information to assure the Court that this proposed expert testimony will be based upon Officer Sparks' extensive contact as a law enforcement officer with illegal drug trafficking, rather than based upon conclusions drawn from Sparks' knowledge of the investigation in this case. See United States v. Dukagjini, 326 F.3d 45, 55 (2d Cir. 2003) (officer expert testimony permissible to interpret individual code words); United States v. Mejia, 545 F.3d 179, 192-93 (2d Cir. 2008) (one way an officer might "stray from the scope of his expertise" is by interpreting ambiguous terms based on knowledge gained through involvement in the case rather than the fixed meaning of those terms). Further, it is apparent from the supplemental disclosure that this proposed testimony will not be based on hearsay in violation of Crawford v. Washington, 541 U.S. 36 (2004).

### B. Terms From Intercepted Phone Calls

For the reasons set out below, the Court will not permit Officer Sparks to "testify to his opinion of the meaning of the [four terms or phrases coming from intercepted telephone calls] by apply[ing] his experience to an analysis of the context of intercepted calls[.]"

The dangers inherent in allowing a law enforcement officer involved in the case at hand to testify as an expert concerning coded terminology are well known. See Mejia, 545 F.3d at 190 ("If the officer expert strays beyond the bounds of appropriately 'expert' matters, that officer

becomes, rather than a sociologist describing the inner workings of a closed community, a chronicler of the recent past whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt."). In particular, expert testimony must only relate to subject matter that is "beyond the ken" of the average juror. Mejia, 545 F.3d at 191-92. Further, an expert may not (i) testify about the meaning of conversations in general, beyond simply interpreting code words, or (ii) interpret ambiguous terms for the jury based on knowledge gained through involvement in the case rather than informing jury of "drug code with fixed meaning within the narcotics world," Dukagjini, 326 F.3d at 55.

The proposed testimony concerning the terms "whizzy," "big," "go fishin' with it," and "grizzy" run afoul of these principles.

With regard to the term "whizzy," the government proposes to elicit from Sparks his opinion that it refers to cocaine. The term is used in the following excerpt from an intercepted phone call:

| Lamonte Watson: | Yeah, I'm gonna know something in a minute, but I don't know how good the whizzy gonna be. My guy talking about it ain[']t lookin the pretty. |
|---|---|
| Vourice Meeks: | Shit as long as that shit take that water man we good. If we can just break even right now, shit . . . feel me? |

[DE@281] at 8. The government summarizes the basis for Sparks' prospective testimony that the term "whizzy" means cocaine as follows: "Officer Sparks knows that cocaine is commonly converted into crack through a process that involves dissolving the powder into water. Meeks indicated that the "whizzy" or cocaine would be fine as long as it could convert into crack." Id.

Officer Sparks' proposed testimony "usurp[s] the jury's function." Dukagjini, 326 F.3d at 54. It is proper for Sparks to testify that water is commonly used in converting cocaine into crack. But that is the only element of this inquiry that is a matter of his expertise. The remaining

4

question – whether in the context of the above conversation the use of the phrase "take that water" relatively soon after talking about "whizzy" means that "whizzy" likely means cocaine – is a matter for the jury's judgment. Once Officer Sparks gives the jury the benefit of his experience-based expertise about water's role in formulating crack, he provides no other special knowledge that would properly assist a jury in determining whether to draw the ultimate conclusion concerning the definition of "whizzy."

The Court will similarly limit testimony related to the phrase "go fishin' with it," which the government contends refers to the process of converting cocaine base into crack. The call excerpt the government offers is:

> Timothy Grayson: Did anybody go fishin with it?
>
> Lamonte Watson: S**t, Rasheed said it did what it did for him.
>
> Timothy Grayson: Oh, okay, that's all. (UI)
>
> Lamonte Watson: And, he said he, he said it tried to lock up for him quick, though, but he, I think he dry whipped it.
>
> Timothy Grayson: Oh, okay, well you, I'm a, uh, I'm fiddin' to come pop up on you then . . . I'm, I'm probably gonna be the morning for them other two.

[DE#281] at 6. The government contends that Officer Sparks knows from experience (i) that individuals who purchase cocaine for resale are particularly concerned with the quality of the drug because cocaine is easily diluted in order to increase its quantity, (ii) that much of the value of cocaine is dependent on its conversion to crack, or hard cocaine, (iii) that the conversion of cocaine into crack involves the cocaine turning into a solid form, or "locking up," and (iv) that low quality cocaine at times converts into hard crack cocaine too quickly, thereby inhibiting the ability to add further dilutants. It further contends that "[b]ased on Officer Sparks['] experience

5

and this context, Officer Sparks can offer an opinion that 'go fishing with it' referred to the conversion of powder cocaine into crack." Id. at 7-8.

As explained above, the Court will not permit Sparks to testify to the ultimate conclusion of what the conversation participants were referring to by the term "going fishing." However, if Officer Sparks can testify that the phrase "lock up" is a common way of referring to cocaine turning into a solid form, then there is at least an inferential link that "going fishin' with it" means cooking cocaine into crack. Officer Sparks can testify to the facts he knows from experience, and jury members can then decide for themselves whether, in the context of the conversation, the phrase actually refers to the crack manufacturing process.

For different reasons, the Court will not allow Sparks to testify, without more of a foundation, that the term "big" refers to 1/8 of kilogram of cocaine and that "grizzy" means a gram.

The Court finds insufficient the inferential chain in the government's argument that a "big" means 1/8 of a kilogram of cocaine. The government offers excerpts from three phone calls:

    (Call one)
    Duane Williams:    Are we still looking good?

    Lamonte Watson:    I ain't got that same no more. I got some other shit it ain't it it just coming back. It ain't the best, but it it's for like thirty five a big.

    (Call two)
    Duane Williams:    That's what I told them. I said man I can get you a big for like for three man, and it's, it's, it's cookin but its ain't doin' what it's doin', at least like alright when I took it over there and I cook it in his face.

    Lamonte Watson:    Yeah

| | |
|---|---|
| Duane Williams: | You know what I'm sayin and he like, man . . . but I'm fiddin' to go talk to the nigga man 'cause I was tryin' to get rid of this shit and then I got about four other calls but I don't wanna give any of these niggas' back their money back for real. |

. . .

(Call three)

| | |
|---|---|
| Lamonte Watson: | UI . . . not really I got some work, but it ain't that good. |
| Shawn Smith: | Uhhh . . Shit, it's work. |
| Lamonte Watson: | I mean you know it'd lock up everything but it ain't gonna jump and some people might not know how to hook it right, but it, my guy, I know it'd lock up for sure . . . you going to get what you get back . . . it's 35 a big though. |
| Shawn Smith: | Yea., what shit you got, I got to deal with it . . uh . . I be, man I got . . . . I got . . I got . . I got uh . . . 3 dollars right now, but I jus' was waiting on my peoples . . . uh . . you know my white boy to come. |
| Lamonte Watson: | Oh, ok . . yeah . . . . that's all I got, but shit . . . 35 . . |
| Shawn Smith: | A'igh just, you know when . . I . . . shit . . when cause when I . . I'm trying to have every penny . . you know what I'm saying. . . |

281 at 4-5. The government argues that Officer Sparks should be able to offer his opinion that the term "big" refers to one-eighth of a kilogram of cocaine based on the following information: (i) Sparks knows that "$3500 is a fairly low, wholesale price for one-eighth of a kilogram of cocaine" and (ii) Sparks also knows that the terms "cooking" and "lock up" refer to the process of converting powder cocaine into crack. Id. at 5-6.

The Court finds the inferential chain the government proposes to be without adequate foundation. First, the speakers in the intercepted calls never say $3500; they refer only to "35" in reference to a "big." Translating "35" into "3500" and understanding it to mean "3500 dollars" requires another set of inferential leaps, for which the government does not purport to

offer expert testimony. Second, even understanding the terms "cooking" and "lock up" to refer to the cocaine conversation process, that predicate has no bearing on whether "big" is one-eighth of kilogram of cocaine. In fact, nowhere in the conversations is one-eighth of a kilogram mentioned. So, the only basis for concluding that that is the amount of a "big" is Sparks' understanding that "$3500 is a fairly low, wholesale price for one-eighth of a kilogram of cocaine." Id. at 5. This is problematic for two reasons. First, Sparks does not assert that $3500 is the standard or average price of one-eighth of a kilogram. The fact that Sparks indicates that the price seems non-average (or "low") for that amount gives reason to question whether the assigned amount is correct. Second, even in the course of the government's excerpted conversations, a "big" is not always "35" – Defendant Duane Williams represents that he "can get [someone] a big for like for three. . ." Id. at 5.

For these reasons, the Court will not permit Officer Sparks to offer testimony in relation to the meaning of a "big," unless the government can establish an appropriate foundation.

Finally, the same is true with regard to the conclusion that a "grizzy" means a gram. The government makes its case as follows:

> The term "grizzy" was intercepted in several calls. In a call Between Shawn Smith and a male identified only as Roger, Smith and Roger discussed the weight of a substance. Roger described providing a "tester" which Officer Sparks knows to be a small quantity of drugs given to users so that they can determine the quality of the drug. The discussion also related to one-tenth of a unit measurements. Officer Sparks knows that grams, particularly grams of heroin, are commonly divided into one-tenth of a gram quantities. Thus, Officer Sparks can offer an opinion, based upon his experience, that the term "grizzy" is code f[or] gram. The following is an excerpt from that call:
>
> Shawn Smith: Man that shit 3.3 my nigga, I swear to God.
>
> Roger: What?

8

| | |
|---|---|
| Shawn Smith: | On my mama. |
| Roger: | What? |
| Shawn Smith: | Yeah. Yeah. It was four even with the bag. And you had the bag tore. |
| Roger: | Right. |
| Shawn Smith: | Yeah. |
| . . . | |
| Roger: | Cuz, on my, on my kids, all I did was just give a little tester out. |
| Shawn Smith: | Shit, you probably gave too much nigga. |
| Roger: | No, no, hell no. I ain't give no grizzy out. |
| Shawn Smith: | No, you gave seven tenths out. It's three three. |
| Roger: | Noooh. I only did one person. |

[DE#281] at 7-8.

The Court finds the government's argument insufficient. It is simply not clear from the context of the conversation that the jury could legitimately conclude that "grizzy" means gram. Accepting all of the expertise-based facts that Officer Sparks offers, one could conclude that a grizzy is some amount. But, in the context of the conversation it could only be inferred that a "grizzy" would be "too much." (Shawn Smith told Roger that he probably gave out too much, Roger responded, no, that he did not give "no grizzy.") It could be "seven–tenths" of something, or it could be another amount altogether. But the conversation does not give sufficient basis to conclude that the amount in question is grams or that a "grizzy" is one gram.

Accordingly, as set out in detail above, Officer Sparks will be permitted to give only limited testimony concerning the four terms/phrases originating from intercepted phone calls.

9

**III.    Conclusion**

For the foregoing reasons, Defendant Damichael Washington's "Motion for Disclosure of, and to Limit the Scope of, Expert Testimony Regarding Drug 'Lingo' or 'Code'" [DE#186] and Defendant Antonio Watson's "Motion to Limit Expert Testimony" [DE#192] are GRANTED IN PART and DENIED in part.

IT IS SO ORDERED.

Dated:  April 25, 2011                                         s/Mark A. Goldsmith
                                                                               MARK A. GOLDSMITH
                                                                               United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 25, 2011.

                                                                               s/Deborah J. Goltz
                                                                               DEBORAH J. GOLTZ
                                                                               Case Manager